# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: | JOINTLY ADMINISTERED UNDER BKY 17-42726 Chapter 7 |
| WYNIT Distribution, LLC, | BKY 17-42726 |
| WD Navarre Distribution, LLC, | BKY 17-42728 |
| WD Encore Software, LLC, | BKY 17-42729 |
| WD Navarre Holdings, LLC, | BKY 17-32864 |
| WD Navarre Digital Services, LLC, | BKY 17-32865 |
| WYNIT Holdings, Inc., | BKY 17-32866 |
| WD Navarre Canada, ULC, | BKY 17-32867 |
| Debtors. | |

| | |
|---|---|
| Nauni Manty, as Chapter 7 Trustee for the Bankruptcy Estate of the above Debtors, | Adversary Case No._____ |
| Plaintiff, | |
| vs. | **COMPLAINT** |
| Microsoft Corporation, | |
| Defendant. | |

Nauni Manty, as Chapter 7 trustee for the Debtors' estates (the "Plaintiff"), for her complaint against Microsoft Corporation (the "Defendant") avers as follows:

1.      Wynit Distribution, LLC (the "Debtor" or "Wynit"), is a New York limited liability company that no longer has a principal place of business.

2.      The Defendant is a Washington corporation headquartered at One Microsoft Way, Redmond, Washington, 98052-6399.

3.    The petition commencing the Debtor's Chapter 11 case was filed on September 8, 2017. The case was converted to Chapter 7 on January 17, 2018, and the Plaintiff was appointed as trustee on January 19, 2018.

4.    This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.

5.    This adversary proceeding is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (B), (E), and (O).

6.    This adversary proceeding arises under 11 U.S.C. §§ 323, 542, and other applicable law.

7.    The Plaintiff consents to the bankruptcy court's entry of final orders and judgment in this adversary proceeding.

## FACTUAL ALLEGATIONS

8.    Wynit and the Defendant entered into that certain Microsoft Retail Distribution Agreement May 5, 2015 (the "Agreement"). A true and correct copy of the Agreement is attached hereto as Exhibit A.

9.    Pursuant to the Agreement, the Defendant granted Wynit, among other things, the right to distribute product supplied by the Defendant ("the Product").

10.    The Agreement also provides for offsets or credits associated with the Product that may, for example, be returned or defective.

11.    The Agreement also provides for price protection for which the Defendant agreed to credit Wynit if the Defendant reduced any Product price for any other distributor.

2

12.     The Agreement also provides that the Defendant would provide Wynit with credit or payment in connection with marketing programs.

13.     As a result of the terms above, the Defendant owes the Debtor $189,285.39 (the "Amount Due").

14.     By letter dated February 23, 2018, the Plaintiff demanded that the Defendant pay the Amount Due within 21 days thereafter, but the Defendant failed to do so. A true and correct copy of the letter is attached hereto as Exhibit B and includes a summary of the Amount Due.

## Count I
## Breach of Contract

15.     The Plaintiff hereby incorporates all paragraphs above.

16.     Pursuant to the Agreement, the Defendant owes Wynit the Amount Due.

17.     The Defendant has failed and refused, and continues to fail and refuse, to pay the Amount Due to Wynit. As a result, the Defendant is in breach of the Agreement.

18.     The Plaintiff requests that the Court enter judgment against the Defendant and in favor of the Plaintiff for the Amount Due.

## Count II
## Turnover of Assets of the Estate (11 U.S.C. §§ 542 and 543)

19.     The Plaintiff hereby incorporates all paragraphs above.

20.     The Amount Due constitutes property of Wynit.

21.     Sections 542 and 543 of the Bankruptcy Code require that the Defendant turn over or deliver such property to the Plaintiff and account for the property or the value of such property.

3

22.     The Defendant is in possession of property of Wynit's estate, and for which there has been no turnover or accounting.

23.     The Plaintiff requests that the Court order the Defendant to turn over the estate property and provide an accounting to the Plaintiff.

**Count III**
**Disallowance of Claim Pursuant to 11 U.S.C. § 502(d)**

24.     The Plaintiff hereby incorporates all paragraphs above.

25.     Pursuant to 11 U.S.C. § 502(d), the court is required to disallow any claims the Defendant holds against the Debtor until or unless the Defendant has paid the Plaintiff the amount the Defendant is liable to the trustee under 11 U.S.C. § 542.

**WHEREFORE**, the Plaintiff demands judgment against the Defendant as follows:

1.     Judgment in an amount equal to the Amount Due in favor of the Plaintiff and against the Defendant;

2.     Judgment in favor of the Plaintiff and against the Defendant directing that the Amount Due be turned over to the Plaintiff;

3.     Judgment against the Defendant in favor of the Plaintiff for damages;

4.     Sustaining the Plaintiff's objection to any claims held or asserted by the Defendant in their entirety;

5.     For pre-trial and post-trial interest as allowed by law and the Agreement;

6.     For the Plaintiff's costs and disbursements herein; and

7.     For such other and further relief as the Court deems just and equitable.

4

Dated:  April 3, 2018

MANTY & ASSOCIATES, P.A.

By:    */e/ Christopher A. Camardello*
Nauni Manty (#230352)
Dennis O'Brien (#0080469)
Christopher Camardello (#284798)
Jacqueline J. Williams (#386611)
Mary Sieling (#389893)
401 Second Avenue North, Suite 400
Minneapolis, MN 55401-2097
Phone: (612) 465-0990
Email: chris@mantylaw.com

*Attorneys for the Trustee*

## <u>VERIFICATION</u>

I, Nauni Jo Manty, trustee and plaintiff named in the complaint, declare under penalty of perjury that the facts contained in the foregoing complaint are true and correct to the best of my knowledge, information and belief.

Dated: April 3, 2018

_____
Nauni Jo Manty, Trustee

DocuSign Envelope ID: 534EBFC3-0BE2-4856-951E-6F5418403486

## Microsoft Retail Distribution Agreement (Distributor)

This Microsoft Retail Distribution Agreement (Distributor) (**"Agreement"**) is entered into as of the 5th day of May, 2015 (the **"Effective Date"**) between Microsoft Corporation, a Washington Corporation ("**Microsoft**") WYNIT Distribution, LLC a New York Limited Liability Company ("**Distributor**").

| Address and Contact Details | |
| --- | --- |
| **Microsoft** | **Wynit Distribution** |
| Address:<br>One Microsoft Way<br>Redmond, WA 98052 | Address:<br>5801 East Taft Rd<br>North Syracuse, NY 13212 |
| Microsoft Contact:  Darryl Postelnick | Distributor Contact: Randy Saputo |
| Title: Vice President, Retail & Operator Channel Sales, United States | Title: CFO |
| Phone Number: +1 (425) 703-2246 | Phone Number: 315.437.7617 x2300 |
| Fax Number: +1 (425) 936-7329 | Fax Number: 315.437.0432 |
| E-Mail Address: edretail@microsoft.com | E-Mail Address: Rsaputo@wynit.com |
| With a copy to:  Microsoft Legal and Corporate Affairs, U.S. Retail Sales and Marketing (same address as above) | With a copy to: Legal Affairs (same address as above) |

### SECTION 1    Agreement Scope

This Agreement sets forth the master terms and conditions applicable to Distributor's distribution of Products to Resellers in the Territory.  This Agreement includes the Guides, which are incorporated by this reference.

### SECTION 2    Definitions

The following terms will have the following meanings:

(a)    **"Affiliate"** means any legal entity that owns, is owned by or is under common ownership with a party. **"Own"** means having more than a fifty percent (50%) ownership or the right to direct the management of the entity.

(b)    **"Authorized Products"** means the specific products within each Authorized Product Category that Distributor may distribute to Resellers in the Territory as set forth in attached <u>Exhibit 1</u>, as the same may be amended by Microsoft from time to time.

(c)    **"Authorized Product Categories"** means the Microsoft product categories that Distributor is authorized to distribute as set forth in <u>Exhibit 1</u>, as the same may be amended by Microsoft from time to time.

(d)    **"Card"** means a physical card that includes a Code or other End User instructions for unlocking, activating or otherwise accessing a Product.

(e)    **"Code"** means the alphanumeric key code that unlocks a POSA Product, ESD Product, Gift Card or other Product.

<u>EXHIBIT A</u>

DocuSign Envelope ID: 534EBFC3-0BE2-4856-951E-6F5418493486

(f)    **"Digital Product"** means any Microsoft product that Distributor may deliver to or activate for Resellers through one or more Digital Product Delivery Solutions.  ESD Products and POSA Products are Digital Products.

(g)    **"Digital Product Delivery Solution"** means the proprietary digital and electronic transmission methods used by Microsoft to deliver a product in whole or in part to Distributor for distribution under this Agreement.

(h)    **"Distributor Partner"** means, collectively, Distributor Subsidiaries and fulfillment companies.

(i)    **"Distributor Subsidiary"** means a Distributor Affiliate that: (i) that is owned by Distributor; and (ii) has a binding Distributor Partner Agreement, as defined in Section 8(a), with Distributor and Microsoft.

(j)    **"End User"** means the ultimate consumer of a Product, typically an individual.

(k)    **"ESD Product"** means a Microsoft product that is delivered to a Reseller via: (i) an electronic software download **("ESD")** delivery solution; (ii) the digital transmission of a Code; or (iii) any other digital means.

(l)    **"Gift Cards"** means the branded physical Cards and electronic currency stored value cards that: (i) are identified by a specific stock-keeping unit **("SKU")** number on the Price List; and (ii) include the Codes and redemption instructions necessary for an End User to associate currency stored value with the End User's Microsoft account.  "Gift Cards" are a subset of Physical Products, ESD Products or POSA Products, as applicable.

(m)    **"Guides"** means, collectively, the Product Terms Guide, the Microsoft Operations Resource Guides and Technical Onboarding Kits set forth in <u>Exhibit 1</u>, as the same may be amended by Microsoft from time to time.

(n)    **"Laws"** means laws, rules, regulations, ordinances and codes.

(o)    **"Marketing Materials"** means any marketing materials provided or made available by Microsoft to Distributor to promote and facilitate the sale of Products.

(p)    **"Marks"** means trademarks, service marks, logos, copyrights and trade names.

(q)    **"NDA"** means the Non-Disclosure Agreement between the parties dated July 18, 2011.

(r)    **"Physical Product"** means: (i) a physically packaged Microsoft product or software, including any pre-activated Card; or (ii) any other Microsoft Product where Microsoft invoices Distributor upon shipment or delivery, rather than upon activation.

(s)    **"POSA Product"** means a Microsoft product that is delivered to Distributor via a point of sale activated **("POSA")** Card.

(t)    **"Price List"** means the Microsoft list or offer catalog that includes the then-current prices for Microsoft products and from which Distributor may order Products, as the same may be amended by Microsoft from time to time.

(u)    **"Product"** means a Physical Product, Digital Product or other product that (i) is identified by a specific stock keeping unit **("SKU")** number on the Price List and (ii) for purposes of Distributor's authorization to distribute

<u>EXHIBIT A</u>

under this Agreement, is designated as an Authorized Product.  Products include any related Codes, Cards and Product Information.

(v)    **"Product Information"** means Product-related materials, metadata and/or other information that Microsoft makes available Distributor.  Product Information includes, but is not limited to: (i) title, SKU, publisher, list price (suggested retail price), version or release number, date of first publication, electronic images, sounds, videos, animations and any computer code that provides access to the same; (ii) any Microsoft Marks that consist of text or that are embedded or incorporated into any of the foregoing; and (iii) the Required Minimum Terms and Conditions.

(w)    **"Recalled Product"** means any Product that Microsoft decides to recall.  Recalled Product excludes any Product modified, altered or damaged after Distributor, or a party authorized by Distributor, takes possession of the Product.

(x)    **"Required Minimum Terms and Conditions"** means the terms and conditions set forth in the Guides or that Microsoft separately delivers or makes available to Distributor and which must be clearly and conspicuously disclosed to End Users.  The Required Minimum Terms and Conditions may include, without limitation, Product specifications, system requirements, storage limitations, activation instructions, geographical coverage or support limitations and support contact information.

(y)    **"Reseller"** means a Subdistributor or Retailer.

(z)    **"Retailer"** means any entity in the Territory that purchases Products from Distributor or Subdistributor and markets and sells Products to End Users in the Territory.

(aa)   **"Street Date"** means the date on which a given Product is first made generally available for purchase and receipt by End Users in the Territory.

(bb)   **"Subcontractor"** means a third party, including any Distributor Affiliate that Microsoft approves under Section 8(b) and to whom Distributor delegates specified obligations under this Agreement.

(cc)   **"Subdistributor"** means any distributor entity in the Territory that purchases Products from Distributor and sells such Products: (i) directly to a Retailer; or (ii) to another subdistributor entity in the Territory which then sells such Products to a Retailer.

(dd)   **"Technical Onboarding Kit"** means the technical integration onboarding guide provided or made available by Microsoft to Distributor for a Digital Product.

(ee)   **"Territory"** means the territory set forth in Exhibit 1.

Capitalized terms not defined above will have the meanings assigned to them elsewhere in this Agreement or in the Guides.

**SECTION 3    Distribution Rights and Obligations**

(a)    **License and Distribution Rights.**  On the terms and subject to the conditions set forth herein, Microsoft grants to Distributor a non-exclusive, limited, non-assignable and non-transferrable license and right during the Term to order and distribute Products solely to Resellers in the Territory.  Microsoft may limit Distributor's right to distribute certain Authorized Products to certain Resellers (and their respective

Affiliates) (each, a **"Named Account"**) as set forth in attached Exhibit 1-A. Distributor may sublicense its rights under this Section 3(a) solely to Resellers in the Territory and only on terms no less protective to Microsoft than the terms set forth in this Agreement. Without limiting the foregoing, Distributor will advise each Reseller that its authorization to distribute Authorized Products is conditioned on its compliance with: (i) the Reseller terms and conditions attached as Exhibit 3 (the **"Reseller Terms and Conditions"**), without modification, unless Distributor has entered into an agreement with such Reseller that contains substantially similar terms and conditions binding on such Reseller; and (ii) any Required Minimum Terms and Conditions set forth in the Guides or delivered by Distributor to Resellers. Microsoft may update the Reseller Terms and Condition from time to time and will provide thirty (30) days' notice to Distributor of any material changes. Distributor will promptly cease distribution to a Reseller if it learns that the Reseller is not in compliance with the Reseller Terms and Conditions or the Required Minimum Terms and Conditions. This Agreement does not grant any additional rights to Distributor for any other Microsoft products or technologies and Microsoft reserves all such rights. If Distributor is authorized by this Agreement to distribute Products through its Distributor Partners, Distributor will ensure that its Distributor Partners agree to comply with this Agreement.

**(b)** **General Product Commitments.**

    (1) For purposes of this Agreement, Distributor will only distribute Products that it purchases from Microsoft or a Microsoft-approved source.

    (2) Distributor will not distribute any Products for which it has received notice from Microsoft to cease distribution. In the event of: (i) a Distributor Claim or governmental request that Microsoft determines requires an immediate cessation of distribution of any Product; (ii) any Recalled Product; or (iii) any Product error or defect, Distributor will make best efforts to remove and cease any and all distribution and marketing of the affected Product or Authorized Product Category immediately upon notice by Microsoft. In all other scenarios, Distributor will make best efforts to remove and cease all distribution and marketing of the affected Product or Approved Product Category within thirty (30) days.

    (3) Distributor will not distribute any Product prior to the Street Date for such Product unless authorized in writing by Microsoft.

**(c)** **EULA; Licensing Provisions.** The Products are strictly intended for End Users in the Territory and are subject to the applicable end user license agreement (**"EULA"**) and the Product Information. Distributor will not modify the EULA. Microsoft may cancel or disable an End User's Product according to the EULA without liability.

**(d)** **Use of Marks.** Distributor will comply at all times with Microsoft's Trademark and branding guidelines, including the guidelines at http://www.microsoft.com/en-us/legal/IntellectualProperty/Trademarks/Usage/General.aspx. This Agreement does not grant or transfer to Distributor, its Distributor Partners or its Resellers, any right, title, interest or license in or to any Marks of Microsoft or its Affiliates. All use of Microsoft's Marks by Distributor, its Distributor Partners and its Resellers will inure to Microsoft's benefit.

**(e)** **Use of Marketing Materials.** Subject to the conditions, limitations and restrictions set forth herein, Microsoft grants to Distributor a non-exclusive, revocable, non-assignable, royalty-free and limited license to use the Marketing Materials during the Term solely in connection with the distribution of Products to Resellers in the Territory. Distributor will only use the most up-to-date Marketing Materials and Marks.

Distributor will not modify any Marketing Materials and will not remove or alter any included proprietary notices or licenses. Distributor may only sublicense its rights to Marketing Materials to its Distributor Partners and Resellers, but only as strictly needed to perform its obligations under this Agreement and on terms no broader and no less protective to Microsoft than those set forth in this Agreement. Such rights are not further sublicenseable by any Distributor Partners. If the Marketing Materials are provided pursuant to a separate license or terms of use, those separate terms will also apply, but this Agreement will control in the event of any conflict.

**(f)     Product Restrictions.** Distributor will not:

    (1)     Change, adapt, translate, decompile or reverse engineer any Product, in whole or in part, (except and only to the extent expressly permitted by applicable Law despite this limitation);

    (2)     Lease, rent, sublicense or publish any Product in whole or in part;

    (3)     Use any unauthorized, illegal, counterfeit or modified hardware or software in connection with any Product or re-package or otherwise combine any Product with any unauthorized or unlicensed third-party product that Microsoft concludes may: (i) create a likelihood of confusion for End Users as to the source or origin of the product; or (ii) negatively impact Microsoft's brand;

    (4)     Make unauthorized copies of any Product Information; or

    (5)     Cause any Product, in whole or in part, to be governed by an excluded license. An "excluded license" is any license that requires, as a condition of use, modification or distribution of the Product, that the Product be: (i) disclosed or distributed in source code form; (ii) licensed for the purpose of making derivative works; or (iii) redistributable at no charge.

**(g)     No Other Product Warranties by Distributor.** Distributor will not make any representations, warranties, guarantees or promises with respect to any Product that are not contained in or would conflict with any written warranty documentation that Microsoft provides for delivery to the End User. Distributor will be responsible for any extended warranty that it provides to End Users.

**(h)     Distributor's Technology.** Distributor will provide all equipment, technology and infrastructure required to perform under this Agreement, and will ensure that these items are compatible, as necessary, with Microsoft's equipment, technology and infrastructure.

**(i)     Customer Service.** Distributor will provide customer service to Resellers as set forth in the Guides.

**(j)     Reporting Requirements.** Distributor will provide reporting as set forth in the Guides and as reasonably requested by Microsoft.

**(k)     Reservation of Rights.** To the extent permitted by applicable Law, Microsoft reserves the right, at any time, to:

    (1)     Implement, by notice to Distributor, additional restrictions on the Products. These restrictions may include, without limitation: (i) territorial limitations on distribution of certain Product SKUs; and (ii) exclusion of specific Product SKUs from the Authorized Product Categories;

    (2)     Allocate Product, limit the amount of Product available for order, or discontinue any Product; and

<u>EXHIBIT A</u>

DocuSign Envelope ID: 534EBFC3-0BE2-4856-951E-6F541B403486

(3)     Suspend or terminate Distributor's right to distribute an Authorized Product Category or a specific Product, by notice to Distributor, removal of the Product from the Authorized Product Category or Price List, or making the Product unavailable to order.

**SECTION 4     Product Orders, Availability and Returns**

**(a)     Orders and Availability.**  All Product orders will be subject to the terms and conditions of this Agreement and will be submitted according to the process and requirements set forth in the Guides.  Any terms or conditions that Distributor includes with its orders, invoices or web portals, or otherwise provides to Microsoft in connection with this Agreement, are hereby excluded and will be deemed void and will not amend or modify this Agreement.  Microsoft will have no liability to Distributor due to lack of Product availability, any Product shortages, or any delay in fulfilling an order.  Fulfillment times are estimates only.

**(b)     Returns.**  Returns will only be permitted as set forth in the Guides or as required by applicable Law.

**SECTION 5     Marketing Programs**

Microsoft or its Affiliates, at their discretion, may invite Distributor to participate in programs intended to help promote the marketing or sale of products, which may include the Products (**"Marketing Programs"**).  Distributor agrees that its participation in any Marketing Programs is voluntary and will be governed by separate terms and conditions.  Distributor must comply with this Agreement to be eligible for and remain in any Marketing Programs.

**SECTION 6     Payment**

**(a)     Payment Terms.**  Microsoft will issue invoices to Distributor for Product purchases as set forth in the Guides.  Payment terms, calculated from the date of Microsoft's invoice, are net thirty (30) days for Digital Products and net forty-five (45) days for Physical Products.  Distributor will ensure that Microsoft receives payment in full by the invoice due date regardless of dispute status.  All invoices outstanding more than thirty (30) days past the invoice date may be subject to: (i) a one-time late penalty of one percent (1%) of the total invoice amount; and (ii) a finance charge of up to two percent (2%) of the total invoice amount, calculated and payable monthly (or the legal maximum, if less).  All wire or Electronic Funds Transfer (EFT) payments received in Microsoft's bank account will be matched to open invoices and cleared accordingly.

**(b)     Disputed Invoice Amounts.**  "Disputed Invoice Amounts" means all invoice amounts which Distributor has a good faith reason to contest.  All claims for Disputed Invoice Amounts must be delivered and substantiated in writing as required by Microsoft within thirty (30) days of the applicable invoice due date.  Notwithstanding Section 14(k) below, all claims for Disputed Invoice Amounts not contested as required by this Section 6(b) will be considered waived by Distributor.  The parties will work together in good faith to timely resolve Disputed Invoice Amount claims.

**(c)     Offsets and Deductions**

(1)     **Distributor Deductions.**  Distributor will not make any deductions from or otherwise offset any invoice or amount that is owed under this Agreement.

(2)     **Microsoft Deductions.**  Microsoft may apply accruals for any credit or payments that Distributor may qualify for under any Microsoft Marketing Programs to amounts owed by Distributor under this Agreement.

EXHIBIT A

DocuSign Envelope ID: 534EBFC3-0BE2-4856-951E-6F541B403486

(d)     **Distributor's Financial Condition.** Distributor will provide audited financial statements to Microsoft on Microsoft's request to verify Distributor's financial condition. Microsoft may require that Distributor obtain Products on a cash-in-advance wire transfer basis at any time and without advance notice if Microsoft determines that Distributor's financial condition warrants such payment arrangements. Microsoft may also require that Distributor deliver a letter of credit or other security to secure Distributor's obligations under this Agreement.

(e)     **Payment of Costs.** Each party will bear its own costs incurred in performing its obligations hereunder unless this Agreement provides otherwise.

(f)     **Held Orders.** Microsoft may withhold all pending Distributor Product orders if Distributor: (i) fails to meet any payment terms; (ii) takes deductions from an invoice; or (iii) is in material breach of this Agreement.

(g)     **Price Protection.** Microsoft may, at its discretion, grant to Distributor a price adjustment against Product price reductions made and implemented by Microsoft. Price adjustment terms will be as set forth in the Guides or as communicated to Distributor by separate notice.

(h)     **Currency.** All payments will be in U.S. dollars unless the invoice specifies another currency.

(i)     **Taxes.** The amounts to be paid by Distributor to Microsoft under this Agreement do not include any foreign, U.S. federal, state, local, municipal or other governmental taxes, duties, levies, fees, excises or tariffs, arising as a result of or in connection with the transactions contemplated under this Agreement. Distributor will pay Microsoft or the applicable governmental entity any applicable value added, sales or use taxes or like taxes that are owed by Distributor solely as a result of entering into this Agreement or which Microsoft is permitted to collect from Distributor under applicable law. If Distributor provides to Microsoft a valid exemption certificate, Microsoft will not collect the taxes covered by such certificate. Microsoft is not liable for any of the taxes that Distributor is legally obligated to pay as a result of Distributor's distribution of Product to Resellers. All such taxes (including, without limitation, income taxes, withholding taxes, value added, franchise, gross receipt, sales, use, property or similar taxes, duties, levies, fees, excises or tariffs incurred in connection with or related to the distribution of Products) will be the financial responsibility of Distributor. If any taxes are required to be withheld on payments made by Distributor to Microsoft, Distributor may deduct such taxes from the amount owed Microsoft and pay them to the appropriate taxing authority, provided, however, that Distributor promptly secures and delivers an official receipt for those withholdings and other documents reasonably requested by Microsoft to claim a foreign tax credit or refund. Distributor will reasonably cooperate with Microsoft to minimize any taxes withheld to the extent possible under applicable Law. Distributor will defend and indemnify Microsoft and its Affiliates from any taxes (including sales or use taxes paid by Distributor to Microsoft) or third party claims, causes of action, costs (including, without limitation, reasonable attorneys' fees) and any other liabilities of any nature whatsoever related to such taxes in accordance with Section 13(d) below. Except as set forth in Section 6(j) below, this Section 6(i) will govern the treatment of all taxes arising as a result of or in connection with this Agreement.

(j)     **Tax Treatment of Gift Cards.** If Distributor distributes Gift Cards, then the following tax language applies in addition to Section 6(i) above. Unless required by applicable Law, Distributor will not collect sales, use or other comparable taxes on the sale of any Gift Card to a Reseller. Microsoft will collect any such taxes that are required to be paid under applicable Law upon the redemption of such Gift Card by an End User.

**SECTION 7        Distributor Compliance Obligations**

<u>EXHIBIT A</u>

DocuSign Envelope ID: 534EBFC3-0BE2-4856-951E-6F541B402486

Distributor will:

**(a)**   Conduct the sale, distribution and marketing of the Products in a manner that complies with all applicable Laws;

**(b)**   Comply with all applicable and commonly acceptable payment card industry standards regarding the use, acceptance and processing of payment cards in connection with distributing the Products;

**(c)**   Not engage in or facilitate the unauthorized distribution, duplication or pirating of the Products, and provide reasonable cooperation to Microsoft in connection with piracy investigations involving the Products;

**(d)**   Comply with Microsoft's reasonable requests aimed at ensuring compliance with legal requirements applicable to the Products. If Microsoft is required to report to any governmental agency that regulates distribution of consumer products, Distributor will fully cooperate and provide assistance as needed;

**(e)**   Comply with all applicable privacy Laws related to the storage, collection, use and processing of personal information and payment card data related to its performance of this Agreement;

**(f)**   Comply with all applicable international, national and local Laws in the Territory, including, without limitation, the U.S. Export Administration Regulations, the International Traffic in Arms Regulations, and end-user, end use and destination restrictions of the U.S. and other governments as further described at www.microsoft.com/exporting. The Products are subject to U.S. export jurisdiction;

**(g)**   Comply, as the importer or distributor of Products, with all applicable Laws relating to importation, collection, treatment, recovery, recycling, disposal and reuse of hardware and batteries (if any), software media carriers (such as CDs and DVDs) and packaging materials in the Territory. This requirement includes compliance with all registration, reporting advance recycling fee collection and remittance, compliance with applicable Laws related to the destruction of the Products, and financial obligations arising out of such Laws. When required by law and upon written request for purposes of compliance under this Section 7(g), Microsoft will provide Distributor with applicable information on the composition of any materials and with the necessary product and packaging information to meet Distributor's obligations under this Section 7(g). Distributor also agrees to comply with Microsoft Policy regarding Environmental Requirements for Proper Disposal available at http://www.microsoft.com/en-us/download/details.aspx?id=11691;

**(h)**   Solely with respect to the distribution of Gift Cards, comply with all applicable Laws intended to prevent money laundering, including, without limitation, imposing any applicable requirements on the sale of Gift Cards to a single person or within a specific time period. Distributor will implement policies and procedures reasonably adapted to prevent the sale of more than Ten Thousand U.S. Dollars ($10,000) in "prepaid access" to any one person during any single day and thereby avoid being a "seller of prepaid access," as such terms are defined under 31 C.F.R. § 1010.100; and

**(i)**   Comply with all applicable local anti-corruption laws and the U.S. Foreign Corrupt Practices Act (collectively, the **"Anti-Corruption Laws"**). Distributor also will provide annual training to its employees who distribute or market Microsoft products or services on compliance with the Anti-Corruption Laws. To fulfill this requirement, Distributor will either directly provide such training to its employees or require its employees to participate annually in online anti-corruption training made available free of charge by Microsoft. Distributor's record-keeping obligations, for purposes of Microsoft's audit rights, apply to Distributor's compliance with Anti-Corruption Laws. Distributor certifies that it has reviewed and will comply with the

EXHIBIT A

Anti-Corruption Policy for Microsoft Representatives available at http://www.microsoft.com/en-us/Legal/Compliance/anticorruption/Default.aspx.

## SECTION 8    Distributor Partners, Subcontractors and Liquidators

**(a)**    **Use of Distributor Partners for Distribution Activities.** Microsoft, at its discretion, may authorize a Distributor Partner to distribute Products to Resellers at Distributor's request. As a condition of distribution, each Distributor Partner must execute an appropriate agreement with Microsoft covering the approved distribution activities (the **"Distributor Partner Agreement"**). Distributor will order all Products that will be distributed by a Distributor Partner as set forth in the Guides. Distributor unconditionally guarantees its Distributor Partners' compliance with this Agreement and Distributor agrees that it will be liable for the performance or non-performance of each Distributor Partner. A Distributor Partner's right to distribute Products under this Agreement will terminate immediately without written notice and without prejudice to Microsoft's other rights or remedies, if a Distributor Partner: (i) is no longer a Distributor Partner; or (ii) breaches the terms of this Agreement or the applicable Distributor Partner Agreement.

**(b)**    **Use of Subcontractors for Other Activities.** Distributor may use Subcontractors to perform its obligations not covered by Section 8(a) as set forth in this Section 8(b). Distributor unconditionally guarantees its Subcontractors' compliance with this Agreement and Distributor agrees that it will be liable for the acts and omissions of each Subcontractor as if they were its own. Distributor will give Microsoft at least sixty (60) days' notice before it retains any Subcontractor to perform material or wholesale elements of Distributor's obligations under this Agreement, including, without limitation, its entire online business or its customer support functions. Microsoft may: (i) object to the use of any such Subcontractor, in which case Distributor may not use that Subcontractor; or (ii) require, as a condition of using a Subcontractor, that Distributor and Subcontractor have a written contract that requires Subcontractor to comply with Distributor's obligations under this Agreement.

**(c)**    **No Use of Liquidators.** Distributor will not retain any liquidator or other third party to dispose of Distributor's Product inventory in the regular course of business unless the Guides applicable to such Product expressly authorize such use.

## SECTION 9    Risk Management

**(a)**    **Insurance.** Throughout the Term, each party will maintain, at its sole expense, Commercial General Liability Insurance written on an Occurrence Form, with policy limits of not less than Five Million U.S. Dollars ($5,000,000) combined single limit each occurrence for personal injury (including bodily injury and death) and property damage that may arise from or in connection with the performance of such party's obligations hereunder or out of any negligent act or omission of such party, its officers, directors, subcontractors, agents, or employees. Each party will provide proof of its compliance with this Section 9(a) upon the other party's request. Any such proof of compliance, such as certificates of insurance, will be kept current throughout the Term and will provide for at least thirty (30) days' advance notice to the other party if the coverage is to be canceled or materially altered so as not to comply with the requirements set forth above. If Distributor has waived its rights of subrogation or included Microsoft as an additional insured or loss payee, the certificate or other proof of insurance will clearly show in writing Distributor's insurer's acceptance of such requirements. Microsoft may, at its option, meet the insurance requirements outlined above via commercial insurance, self-insurance, alternative risk financing techniques, or a combination of these options.

**(b)**    **Security.** Distributor will implement, maintain and be solely responsible for commercially reasonable security procedures to: (i) facilitate the secure exchange of data; (ii) prevent disclosure of, and unauthorized

access to, End User personal information and transaction data, Microsoft's intellectual property and Confidential Information; (iii) prevent damage or theft to any Product or Marketing Materials; and (iv) comply with its obligations under this Agreement.  Distributor will promptly notify and provide commercially reasonable detail to Microsoft regarding any potentially fraudulent transactions, theft or data breaches that could impact Product inventory, sales and returns, Reseller payment methods and personal information, Product security and Distributor's obligations under this Agreement.  Distributor will perform regular security reviews and audits of its own practices and those of any Subcontractors.  Distributor will provide Microsoft, upon its request, all documents related to such reviews and audits, including all corrective action reports.  On Microsoft's request, not to exceed one request per Microsoft fiscal year, Distributor will have independent security auditors conduct security assessments and audits.  Distributor will make any related findings available to Microsoft.  If the findings establish that Distributor is not in compliance with this Agreement, Distributor will promptly take any required corrective action.

(c)   **Disaster Recovery.**  Distributor will implement and maintain a measurable, documented disaster recovery plan to ensure the continued performance of its obligations under this Agreement.  The plan will include alternative implementation procedures that, at a minimum, address natural disasters, severe weather, labor strikes, and system and telecommunications interruptions. Distributor will comply with any additional disaster recovery requirements set forth in the Guides.  Distributor will have its disaster recovery plan audited by an independent third party security auditor and share the results of such with Microsoft upon request.

(d)   **Delivery and Risk of Loss.**

(1)   **Delivery and Transit Risk.**  Microsoft will ship or electronically deliver Products and Marketing Materials to Distributor DAP (Distributor designated location) (Incoterms 2010).  If Distributor requests and Microsoft agrees to special packaging or shipping arrangements, shipping will be EXW (Microsoft designated location) (Incoterms 2010).  Shipping and handling charges will be listed separately on Distributor's invoice or included in the Product price, at Microsoft's discretion. Products and Marketing Materials delivered or otherwise provided by Distributor to Microsoft will be shipped DAP (Reseller or Microsoft designated location) (Incoterms 2010).

(2)   **On-Premises Risks.**  Distributor will use reasonable efforts to protect Products and Marketing Materials against loss, damage or destruction while such items are under its control and/or in its possession.

**SECTION 10**   **Term and Termination**

(a)   **Term.**  This Agreement takes effect on the Effective Date and will continue in effect for three (3) years (the **"Initial Term"**).  This Agreement will automatically renew for two (2) successive terms of one (1) year each (each, a **"Renewal Term"**), unless one party provides the other with written notice of its intent not to renew this Agreement at least ninety (90) days prior to the expiration of the Initial Term or the then-current Renewal Term.  The Initial Term and each of the two (2) Renewal Terms are collectively referred to as the **"Term."**

(b)   **Termination for Convenience.**  Either party may terminate this Agreement at any time for any reason on thirty (30) days' prior written notice to the other party.

(c)   **Termination with Cause.**

EXHIBIT A

(1)  **By Microsoft.** Without prejudice to Microsoft's other rights or remedies, Microsoft may immediately terminate this Agreement or the Distributor's right to distribute any Product or Authorized Product Category at any time upon written notice to Distributor if any of the following occurs: (i) Microsoft determines that Distributor is distributing counterfeit Product; (ii) Distributor fails to comply with Microsoft's instructions regarding Recalled Product; (iii) Distributor bundles Product with any unauthorized third-party product in violation of Section 3(f)(3); (iv) except as otherwise provided herein, Distributor knowingly distributes Product to any person or entity other than a Reseller in the Territory; or (v) Distributor fails to comply with its data privacy and security obligations under this Agreement.

(2)  **By Either Party.** Without prejudice to either party's other rights or remedies, either party may terminate this Agreement upon thirty (30) days' written notice if any of the following events occur: (i) the other party breaches any of the material terms or conditions of this Agreement, and such breach is not cured to the non-breaching party's reasonable satisfaction within the notice period; or (ii) the other party: (A) makes an assignment for the benefit of creditors; (B) files a voluntary petition under any bankruptcy act, receivership statute or the like; (C) becomes subject to any proceeding under any bankruptcy act, receivership statute or the like; (D) becomes unable to pay its debts as they mature; (E) suffers or permits the appointment of a receiver for its business or assets; or (F) has wound up or liquidated its business voluntarily or otherwise.

(d)  **Rights upon Termination/Expiration.**

(1)  **Other Agreements.** Termination or expiration of this Agreement terminates any applicable amendments and Distributor Partner Agreements

(2)  **Financial and Product Obligations upon Termination.** Any payment obligations that accrue prior to termination or expiration will be due and payable within thirty (30) days of the effective date of termination or expiration. If this Agreement is terminated without cause or naturally expires, Distributor may choose to: (i) continue to distribute Product that it has in its possession; or (ii) return to Microsoft Product that it acquired under this Agreement, provided that such Product is in its original and salable condition, and is returned to Microsoft within sixty (60) days after the effective date of termination or expiration. If this Agreement is terminated by Microsoft for cause, Microsoft will specify in its termination notice whether Distributor must either: (A) return to Microsoft all unsold Product acquired under this Agreement which is in its original and salable condition, at Distributor's sole cost and expense; or (B) continue to distribute Product under the terms of this Agreement until the inventory is depleted. At Microsoft's option, it may either ship or cancel all orders received from Distributor but not shipped by Microsoft prior to the effective date of expiration or termination. Distributor will deliver a final inventory and sales report to Microsoft within thirty (30) days of any termination or expiration of this Agreement.

(3)  Neither party will be liable to the other for damages resulting solely from terminating this Agreement according to its terms.

## SECTION 11    Records and Audits

During the Term and for a period of two (2) years following its expiration or termination, Distributor will keep all books and records relating to Distributor's Product marketing and distribution. During that same period, Microsoft or its designated representative, at its own cost, may conduct audits of the applicable books, records and operations of Distributor as is reasonable to verify Distributor's compliance with this Agreement. Microsoft will give Distributor

reasonable prior notice of an audit, except that Microsoft may enter Distributor's premises without notice toinvestigate counterfeiting and confirm anti-piracy and anti-corruption compliance.  Microsoft or its designee will conduct any such audit during Distributor's normal business hours and in such a manner as not to unreasonably interfere with Distributor's normal business activities.  Without limiting Microsoft's other rights under this Agreement: (i) Distributor will promptly correct any errors and omissions disclosed by such audit; and (ii) Distributor will bear the cost of such audit if it uncovers a discrepancy of at least one percent (1%) of net Product order invoice amounts.

**SECTION 12     Representations and Warranties; Disclaimer of Warranties; Exclusions; Limitation of Liability**

(a)     **Representations and Warranties.**  Each party represents and warrants that: (i) it has the right to enter into and perform its obligations under this Agreement; and (ii) the execution and performance of this Agreement will not violate any other agreement binding such party.

(b)     **Disclaimer of Warranties.**  TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, MICROSOFT DISCLAIMS ALL WARRANTIES TO DISTRIBUTOR, EXPRESS, IMPLIED OR STATUTORY, IN CONNECTION WITH THE PRODUCTS, THE MARKETING MATERIALS AND ANY OTHER ITEMS PROVIDED OR MADE AVAILABLE BY MICROSOFT UNDER THIS AGREEMENT, INCLUDING ANY IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, AND NONINFRINGEMENT OF INTELLECTUAL PROPERTY.

(c)     **No Warranties for Product Not Manufactured by Microsoft.**  To the fullest extent permitted by applicable Law, Microsoft makes no warranties whatsoever relating to any product that is not developed, produced or manufactured by Microsoft or that is distributed under a third party name, copyright, trademark or trade name, even if such product is incorporated within the retail packaging or digital images of a Product.

(d)     **Limitations of Liability.**

(1)     **Exclusion of Certain Damages.**  NEITHER DISTRIBUTOR NOR MICROSOFT NOR THEIR RESPECTIVE AFFILIATES WILL BE LIABLE FOR ANY SPECIAL, INDIRECT, CONSEQUENTIAL OR INCIDENTAL DAMAGES (INCLUDING, BUT NOT LIMITED TO, DAMAGES FOR LOST PROFITS, REVENUES, BUSINESS INTERRUPTION, LOSS OF BUSINESS INFORMATION, AND THE LIKE) ARISING FROM OR RELATED TO THIS AGREEMENT, OR THE USE OR INABILITY TO USE ANY PRODUCT, EVEN IF SUCH PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES OR IF SUCH POSSIBLITY WAS REASONABLY FORESEEABLE.  HOWEVER, THE LIMITATION ON LIABILITY IN THIS SECTION 12(D) DOES NOT APPLY TO (i) DISTRIBUTOR'S (A) NON-PAYMENT, (B) BREACH OF ITS DATA PRIVACY AND SECURITY OBLIGATIONS, (C) UNAUTHORIZED USE OF MICROSOFT'S INTELLECTUAL PROPERTY OR (D) UNAUTHORIZED DISTRIBUTION OR MODIFICATION OF ANY PRODUCT, OR (ii) DISTRIBUTOR'S OR MICROSOFT'S BREACH OF ITS CONFIDENTIALITY OBLIGATIONS, GROSS NEGLIGENCE OR WILLFUL MISCONDUCT.

(2)     **Liability Cap.**  TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, MICROSOFT'S TOTAL CUMULATIVE LIABILITY TO DISTRIBUTOR AND ITS AFFILIATES ARISING FROM OR RELATED TO THIS AGREEMENT WILL NOTEXCEED AN AMOUNT THAT IS FIFTY PERCENT (50%) OF THE AGGREGATE AMOUNT THAT DISTRIBUTOR AND ITS AFFILIATES ACTUALLY PAID TO MICROSOFT UNDER THIS AGREEMENT DURING THE ONE (1)-YEAR PERIOD PRIOR TO THE DATE ON WHICH THE CLAIM FIRST GIVING RISE TO LIABILITY AROSE.

<u>EXHIBIT A</u>

DocuSign Envelope ID: 534EBFC3-0BE2-4856-951E-6F5418403486

(3)    **Application.** THE LIMITATIONS OF LIABILITY SET FORTH IN THIS SECTION 12(D) APPLY REGARDLESS OF WHETHER THE ASSERTED LIABILITY IS BASED ON BREACH OF CONTRACT, TORT (INCLUDING NEGLIGENCE), STRICT LIABILITY, BREACH OF WARRANTY, OR ANY OTHER LEGAL THEORY.

**SECTION 13**    **Defense Against Third Party Claims**

**(a)**    **Microsoft's Defense Obligations – IP Claims.**

(1)    **Defense of IP Claims.** Microsoft will defend Distributor in a lawsuit or other judicial action in the Territory in which a non-Distributor Affiliate third party claims that a Product infringes its copyright, trademark or patent rights or misappropriates its trade secrets (**"IP Claim"**). Microsoft's obligations to defend and pay a patent claim will be limited to patent claims where the Products alone, without combination or modification, directly infringes the patent.

(2)    **Limitations on Microsoft's Defense Obligation.** Microsoft will not be liable for any claim under this Section 13(a) to the extent that the claim or adverse final judgment is based on Distributor's or any Distributor Partner's: (i) distribution or use of any Product or Mark after Microsoft notifies Distributor or any Distributor Partner to stop distribution or use of the Product or Mark; (ii) combination of a Product with any non-Microsoft product, data or business process; (iii) use of a non-Microsoft product, data or business process; (iv) alteration of any Product; or (v) use of any Microsoft Mark without Microsoft's written consent. For the avoidance of doubt, Microsoft will not be liable for any trade secret claim where Distributor or any Distributor Partner acquired the trade secret: (A) through improper means; (B) under circumstances giving rise to a duty to maintain its secrecy or limit its use; or (C) from a person who had a duty to maintain its secrecy or limit its use. Distributor will reimburse Microsoft for any costs or damages that result from these actions.

(3)    **Microsoft's Options.** If Microsoft receives information concerning an IP Claim relating to any Product or Mark, Microsoft may, at Microsoft's expense, but without obligation to do so: (i) procure for Distributor the right(s) or license(s) as may be necessary to address the claim; (ii) discontinue supply of the Product or Mark; or (iii) modify the Product or Mark to make it non-infringing. With (ii) or (iii), and as set forth in Section 3(b)(2) above, Distributor must immediately stop distributing the allegedly infringing Product or use of the allegedly infringing Mark. If any other type of third party claim is brought against Distributor regarding Microsoft's intellectual property, it must notify Microsoft promptly in writing. Microsoft may, at Microsoft's option, choose to treat these claims as being covered by this Section. This Section 13(a) provides Distributor's only remedy with respect to any claim by a third party for intellectual property infringement or trade secret misappropriation claims.

**(b)**    **Microsoft's Defense Obligations – CE Claims.**

(1)    **Defense of CE Claims.** Microsoft will defend Distributor against any CE Claim. **"CE Claim"** means a lawsuit or other judicial action arising under the applicable Laws of the Territory and brought against Distributor, for property damage, personal injuries or death of a person which is solely and proximately caused by the use of any CE Product in accordance with Microsoft's instructions or recommended use. **"CE Product"** means a Microsoft manufactured consumer electronic product, specifically excluding any software or services, which Distributor acquires from Microsoft and is authorized to distribute under this Agreement. Microsoft will have no obligation to defend and pay a claim if: (A) the CE Product has been changed by Distributor; (B) Distributor files a claim or other legal action against Microsoft or its Affiliates for a claim arising from or related to the same CE Claim; or

<u>EXHIBIT A</u>

(C) Distributor makes any public statements relating to the CE Claim or Microsoft's defense thereof without Microsoft's prior written consent. If Microsoft is required to defend a CE Claim under this Section 13(b)(1), and the related lawsuit or other judicial action includes allegations (other than any CE Claim) with respect to non-Microsoft products, then Distributor will retain, at its sole expense, separate counsel to defend against such allegations, and will reimburse Microsoft for all attorneys' fees and costs incurred by Microsoft in defending such allegations.

(2)     **Limitations on Microsoft's Defense Obligation.** This defense obligation is limited to only those damages solely and proximately caused by the use of a CE Product in accordance with Microsoft's instructions or recommendations for use and excludes any damages that may have been proximately caused by the misuse of any CE Product or proximately caused by the use of any other product.

(3)     **Microsoft's Options.** If Microsoft receives information concerning a CE Claim, Microsoft may, at Microsoft's expense, but without obligation to do so: (i) replace or modify the CE Product to correct any alleged defect; or (ii) discontinue distribution of the CE Product. With (i) or (ii), and as set forth in Section 3(b)(2) above, Distributor must immediately stop distributing the allegedly defective Product.

(c)     **Microsoft's Payment of Adverse Final Judgments.** If Microsoft is responsible under this Agreement for an adverse final judgment (or settlement to which Microsoft consents) resulting from an IP Claim under Section 13(a) or CE Claim under Section 13(b), Microsoft will pay it for Distributor. Microsoft's obligations are subject to the following conditions: (i) Distributor must promptly notify Microsoft in writing of the claim; (ii) Microsoft will have sole control over defense and/or settlement of the claim; and (iii) Distributor will provide Microsoft with reasonable assistance in the defense of the claim.

(d)     **Distributor's Defense Obligations – Distributor Claims.** Distributor will defend Microsoft against any Distributor Claim. **"Distributor Claim"** means any third party claim or allegation against Microsoft or its Affiliates that arises out of or is connected with any default, breach or alleged default or breach of this Agreement by Distributor, Distributor's distribution of any Products, or any act or omission by Distributor. If there is an adverse final judgment (or settlement to which Distributor consents) resulting from any Distributor Claim, Distributor will pay it for Microsoft. Microsoft will promptly notify Distributor in writing of the Distributor Claim, specify the nature of the claim and the relief the third party seeks. Microsoft will give Distributor reasonable assistance in the defense of the Distributor Claim. Both parties may participate in the selection of counsel, defense and settlement of any Distributor Claim covered by this Section 13(d). If Microsoft decides to do this, Distributor and Microsoft will work together in good faith to reach decisions about which both parties agree. Distributor must have Microsoft's written consent before settling any Distributor Claim. Microsoft will not unreasonably withhold such consent.

**SECTION 14     Miscellaneous**

(a)     **Non-Exclusive.** This Agreement is nonexclusive. Either party may: (i) enter into similar agreements with third parties; and (ii) market and distribute third-party technology, data and content, directly or indirectly, instead of or in addition to the Products.

(b)     **Assignment.** Distributor may not assign or otherwise transfer this Agreement or any of its rights or obligations hereunder by contract, merger, operation of law or otherwise, without Microsoft's prior written consent. Any attempted assignment in violation of this Section 14(b) will be null and void. Microsoft may immediately terminate this Agreement in the event of an attempted assignment. Microsoft may assign this Agreement to any of its Affiliates without Distributor's consent on written notice to Distributor. Subject to

EXHIBIT A

the foregoing provisions of this Section 14(b), this Agreement will be binding on and inure to the benefit of the parties and their respective successors and permitted assigns.

(c)     **Confidentiality.**

(1)     **Existing NDA.** The terms of this Agreement and the information shared under it are Confidential Information subject to the NDA. If the NDA is terminated or otherwise ceases to be in effect during the Term, then Section 14(c)(2) will apply.

(2)     **Confidential Information. "Confidential Information"** means: (i) nonpublic information that Distributor or Microsoft or an Affiliate designates as being confidential; or (ii) nonpublic information which, given the nature of the disclosure or the circumstances surrounding disclosure, the receiving party should treat as confidential. Generally, Distributor and Microsoft will not disclose any Confidential Information of the other at all times during the Term and for five (5) years thereafter. However, there is no time limit on disclosure of Confidential Information that contains personal information. The receiving party will not be liable for the disclosure of information which: (A) it already knew without an obligation to maintain the information as confidential; (B) it received from a third party without breach of an obligation of confidentiality owed to the other party; (C) it independently developed; or (D) becomes known through no wrongful act of the receiving party. Either party may disclose Confidential Information as required by a judicial or other governmental order or request, provided that the receiving party immediately notifies the other party in writing upon its receipt of such order or request and provides reasonable assistance if the disclosing party seeks a protective order or its equivalent to limit disclosure of any such Confidential Information.

(3)     **Feedback.** Without limiting the NDA, either party may provide suggestions, comments or other feedback to the other party with respect to the other party's products, product delivery methods and services. Feedback is voluntary and, even if designated as confidential, the party receiving feedback may use it for any purpose without obligation of any kind. The party receiving feedback will not disclose the source of feedback without the consent of the party providing it. Unless the parties specifically agree in writing, feedback will not create any confidentiality obligation.

(d)     **Publicity.** Except as otherwise required by applicable Law or as otherwise expressly provided under this Agreement, neither party will issue any press release, publicity, or other disclosure in any form that relates to its relationship with the other party or the terms or existence of this Agreement without the other party's prior written approval. Without limiting the generality of the foregoing, Distributor will not issue press releases, publicity or other disclosures in any form that relate to the Price List without Microsoft's prior written approval. Neither party will use the name of the other or any of its Affiliates on any websites or in client presentations or client lists without such other party's prior written approval.

(e)     **Attorneys' Fees; Governing Law.** This Agreement will be governed by and construed in accordance with the internal laws of the State of Washington, without giving effect to any choice of law rule that would cause the application of any laws other than the internal laws of the State of Washington. The parties consent to exclusive jurisdiction and venue in the federal courts (or, if federal jurisdiction does not exist, state courts) sitting in King County, State of Washington. If either Microsoft or Distributor retains attorneys to enforce any rights arising out of or relating to this Agreement, the prevailing party will be entitled to recover its reasonable attorneys' fees, costs, and other expenses, including the costs and fees incurred on appeal or in a bankruptcy or similar action.

EXHIBIT A

**(f)**   **Force Majeure.**  With the exception of Distributor's payment obligations under Section 6(a), neither party will be liable for any failure to perform any obligation under this Agreement to the extent such failure is caused by a force majeure event (including acts of God, natural disasters, war, civil disturbance, action by governmental entity, strike and other causes beyond the party's its reasonable control). The party affected by the force majeure event will provide notice to the other party within a commercially reasonable time and will use its best efforts to resume performance as soon as reasonably possible when the force majeure event concludes.

**(g)**   **Entire Agreement; Order of Precedence.**  This Agreement, including any Exhibits and the Guides, constitutes the entire agreement between the parties regarding the subject matter set forth herein.  This Agreement supersedes and terminates any and all prior agreements or contracts, written or oral, entered into between the parties relating to such subject matter.  In the event of any direct conflict between the various parts of this Agreement, the following order of precedence governs:  this Agreement, the Guides and the Technical Onboarding Kit.  Except as specifically permitted in this Agreement, no amendment or modification of any provision of this Agreement will be effective unless it is in a writing that specifically references this Agreement and is duly signed by authorized representatives of both parties.

**(h)**   **No Partnership or Agency.**  The parties are independent contractors.  This Agreement does not create or constitute a partnership, joint venture, franchise, agency, or contract of employment between Microsoft and Distributor, even if Microsoft and Distributor refer to each other as "partners."

**(i)**   **Severability.**  If any court of competent jurisdiction determines that any provision of this Agreement is illegal, invalid or unenforceable, the remaining provisions will remain in full force and effect.

**(j)**   **Interpretation.**  This Agreement will be interpreted fairly according to its terms, to the maximum extent permitted by law and without any strict construction in favor of or against either party.  The Section headings used in this Agreement are inserted for convenience only.

**(k)**   **No Waiver.**  A party's delay or failure to exercise any right or remedy will not result in a waiver of that or any other right or remedy.  No waiver will be effective unless it is in a writing that specifically references this Agreement and is duly signed by an authorized representative of the waiving party.

**(l)**   **No Third Party Beneficiaries.**  Certain sections of this Agreement are for the benefit of Microsoft's Affiliates. As a result, Microsoft and its Affiliates may enforce this Agreement.  Except for Microsoft's Affiliates, this Agreement does not create any enforceable rights by anyone other than Distributor and Microsoft.

**(m)**   **Notices.**  Except for notices regarding the Guides, all notices and requests under this Agreement will be in writing and delivered via facsimile (receipt confirmed), certified mail or registered post (return receipt requested), or via overnight courier (e.g., Federal Express, or DHL).  Notice will be sent to the addresses on the first page or to such other addresses as either party may indicate in accordance with this Section.  In addition to the notice delivery options above, notices regarding changes to a Guide may also be sent by email to the email address set forth on the first page of this Agreement.  Notices will be deemed effective as follows: (i) one (1) business day after given if transmitted by Facsimile or email; (ii) three (3) business days after deposit in the mail for certified mail; or (iii) one (1) business day after delivery to an overnight carrier.

**(n)**   **Survival.**  Sections 2 (Definitions), 3(i) (Customer Service), 6(Payment), 7(Distributor Compliance Obligations), 10(d) (Rights Upon Termination/Expiration), 11 (Records and Audits), 12(d) (Limitation of Liability), 13 (Defense Against Third Party Claims), 14(c) (Confidentiality), 14(d) (Publicity), 14(e) (Attorneys' Fees; Governing Law), 14(g) (Entire Agreement; Order of Precedence), 14(i) (Severability), 14(j) (Interpretation),

EXHIBIT A

14(l) (No Third Party Beneficiaries), 14(m) (Notices), 14(n) (Survival), and the Guides through sale or return of the applicable Products, will survive the termination or expiration of this Agreement.

**(o)**   **Guide Acknowledgement.** Distributor acknowledges that it has a copy of and that its performance under this Agreement is subject to the applicable Guides. Any amendments to the Guides are set forth in attached Exhibit 2.

**(p)**   **Counterparts.** This Agreement may be executed in counterparts, each of which is an original, but all of which together are one and the same agreement. A signed copy of this Agreement delivered by facsimile, e-mail or other means of electronic transmission will have the same legal effect as an original signed copy.

**(q)**   **English Language.** The English language version of this Agreement will control. Versions in any other language are only for convenience and are not binding on the parties. Communications and notices under this Agreement must be in English language to be effective, except as required by applicable Law.

**IN WITNESS WHEREOF**, the parties have signed this Agreement on the dates indicated below. This Agreement is not binding until executed by both parties.

**MICROSOFT CORPORATION**

By: _Darryl Postelnick_
— 7D8C354D91FB4EB...

Darryl Postelnick
Name (please print)

VP
Title

June 2, 2015
Date

**WYNIT DISTRIBUTION**

By: _____

_Randy Saputo_
Name (please print)

_CFO_
Title

_5-29-15_
Date

<u>EXHIBIT A</u>

## EXHIBIT 1 – AUTHORIZED PRODUCT CATEGORIES, AUTHORIZED PRODUCTS AND TERRITORY

This Exhibit 1 sets forth the Authorized Products Categories, Authorized Products and Territory as of the Effective Date.

### SECTION 1      Authorized Product Categories

Distributor is authorized to distribute Products within the Authorized Product Categories below that are denoted with an "X," provided that Distributor complies with the terms and conditions in this Agreement and in the Guides applicable to such products (the **"Additional Terms and Conditions"**).  Microsoft may update the Authorized Product Categories from time-to-time and will give Distributor thirty (30) days' notice of changes.

Microsoft may update the Guides from time to time and will use best efforts to give Distributor thirty (30) days' notice of material changes.  Distributor will comply with the most current version of the Guides at all times.  Distributor will provide the Guides, as applicable, to Resellers.

[X]    **Physical Products.**  Additional Terms and Conditions for Physical Products:
- Microsoft Operations Resource Guide –Physical Product (Americas Operations Center)
- Product Terms Guide

[__]    **ESD Products.**  Additional Terms and Conditions for ESD Products:
- Microsoft Operations Resource Guide - Electronic Software Distribution (ESD)
- Technical Onboarding Kit applicable to the specific ESD Product
- Product Terms Guide

[__]    **POSA Products.**  Additional Terms and Conditions for POSA Products:
- Microsoft Operations Resource Guide - Point of Sale Activation (POSA)
- Technical Onboarding Kit applicable to the specific POSA Product
- Product Terms Guide

[__]    **[RESERVED]**  Other Authorized Product Categories may be added after the Effective Date by executing additional addenda to this Agreement.

### SECTION 2      Authorized Products

Microsoft may update the list of Authorized Products below from time-to-time by delivering a new Authorized Product list to Distributor.

**The Authorized Products are denoted by an "X" in the chart below.**

| Product | Physical Product | ESD Product | POSA Product | Auto-Renewal Product | [Reserved] |
|---|---|---|---|---|---|
| Windows | N/A | N/A | N/A | N/A | N/A |
| Office | N/A | N/A | N/A | N/A | N/A |
| Windows Gift Cards | N/A | N/A | N/A | N/A | N/A |
| Skype | N/A | N/A | N/A | N/A | N/A |
| Xbox Consoles and Accessories | N/A | N/A | N/A | N/A | N/A |

*Microsoft Retail Distribution Agreement (Distributor) – U.S. Page 18 of 26*

EXHIBIT A

| Product | Physical Product | ESD Product | POSA Product | Auto-Renewal Product | [Reserved] |
|---------|-----------------|-------------|--------------|---------------------|------------|
| Xbox Games | N/A | N/A | N/A | N/A | N/A |
| Xbox Subscriptions | N/A | N/A | N/A | N/A | N/A |
| Xbox Gift Cards | N/A | N/A | N/A | N/A | N/A |
| Other Software, Games and Services | N/A | N/A | N/A | N/A | N/A |
| Surface Devices and Accessories | N/A | N/A | N/A | N/A | N/A |
| Band and Accessories | X | N/A | N/A | N/A | N/A |
| Other Hardware (Mice, Keyboards, Webcams, etc.) | N/A | N/A | N/A | N/A | N/A |
| [Reserved] | N/A | N/A | N/A | N/A | N/A |

**SECTION 3      Territory**

Distributor is authorized to distribute Products to Resellers in the following territory:

The geographic boundaries of the fifty (50) United States, the District of Columbia and Puerto Rico.

**SECTION 4      Named Accounts**

Distributor is authorized to distribute certain Authorized Products to only those Resellers that have been expressly approved by Microsoft as Named Accounts in advance and in writing (email acceptable). For the avoidance of doubt, Microsoft may approve the distribution of some, but not all, Products to a Named Account. Microsoft may update the list of approved Products and Named Accounts from time to time and will make reasonable efforts to give Distributor thirty (30) days' notice of any such changes.

**Exhibit 1-A - Named Accounts**

**Table 1: Named Accounts to Whom Distributor May <u>Not</u> Distribute Products Without Microsoft's Prior Written Consent**

| Authorized Product | Named Account |
|---|---|
| All Physical Products (including, without limitation, Office, Windows, Xbox, Other Software, Games and Services, Surface Devices and Accessories and Microsoft Band Devices and Accessories) | Amazon<br>Apple<br>Best Buy<br>Costco<br>Kroger/Fred Meyer<br>Fry's Electronics<br>GameStop<br>Meijer<br>Microsoft<br>Newegg<br>Nebraska Furniture Mart<br>Office Depot<br>Sam's Club<br>Staples<br>Systemax<br>Target<br>Toys R Us<br>Walmart |

**Table 2: Named Accounts to Whom Distributor May Distribute Microsoft Band Devices and Accessories**

| Authorized Product | Named Account |
|---|---|
| Microsoft Band Devices and Accessories | Dick's Sporting Goods<br>Sports Authority<br>REI<br>Academy Sports<br>Military<br>HSN<br>QVC |

<u>EXHIBIT A</u>

**EXHIBIT 2 - PRODUCT TERMS GUIDE AMENDMENTS**

This Exhibit 2 sets forth the agreed amendments to the Product Terms Guide as of the Effective Date.  The parties may amend this Exhibit 2 from time to time by replacing this Exhibit 2 with an updated Exhibit 2.  Any such updates will not be valid unless they are signed and dated by an authorized representative of each party.

| Product Terms Guide Section Reference | Original Language/Requirement | Amended Language/Requirement |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

<u>EXHIBIT A</u>

DocuSign Envelope ID: 534EBFC3-0BE2-4856-951E-6F5418403486

## EXHIBIT 3 – RESELLER TERMS AND CONDITIONS

Distributor will advise Resellers that their authorization to distribute Products is conditioned on their compliance with the following Reseller Terms and Conditions, without modification, unless Distributor has entered into an agreement with such Reseller that contains substantially similar terms and conditions binding on such Reseller. Capitalized terms in these Reseller Terms and Conditions have the meanings given to such terms in the Agreement or the Guides. Distributor will provide the applicable Guides, or the portions thereof that apply, to Resellers in connection with their distribution of Products.

**1.  Distribution Requirements.**

**(a)**   Reseller shall distribute Products only in the Territory and only to a Retailer (if a Subdistributor) or an End User (if a Retailer).  If Reseller is a Subdistributor, such Subdistributor must advise its Retailer that such Retailer's compliance with these Reseller Terms and Conditions, without modification, is a condition of such Retailer's Distribution to End Users and all references to "Retailer" herein shall apply to such Retailer.

**(b)**   Reseller acknowledges and agrees that Microsoft: (i) will have no liability to Reseller or any End User arising from Product availability or any Product shortages; and (ii) may at any time limit order quantity or impose other limitations or conditions on Products.

**(c)**   Reseller shall not distribute Products provided by any source other than Distributor or Subdistributor unless such source is a Microsoft-approved distributor of the Products.

**(d)**   Retailer shall coordinate with Distributor or subdistributor, as applicable, to ensure fulfillment of each End User's purchase.

**(e)**   Microsoft may discontinue the availability of any Product at any time and shall have no obligation to Reseller with respect to any Product.  Upon notice of discontinuance, Reseller shall immediately return all Codes to Distributor, and Distributor shall be solely responsible for repurchase of Codes returned due to the discontinuance.  Retailers may retain all information and data necessary to provide a digital locker service to End Users in accordance with this agreement.

**(f)**   Microsoft may require Distributor to recall Products at any time.  Reseller shall cooperate in all respects with any such recall.

**(g)**   Reseller shall promptly report any damaged Products to Distributor and shall not sell or resell any such damaged Products to any third party.

**(h)**   Retailer shall provide a secure purchase and check out for End Users.

**(i)**   Reseller shall adhere to all ESD Product specific digital rights management requirements whether provided by Distributor or Microsoft.

**(j)**   Reseller shall comply with the current version of the Additional Terms and Conditions in the Guides that apply to the specific Products distributed by Reseller.

**2.  Marketing.**

**(a)**   Reseller shall market and promote the Products it chooses to sell.

**(b)**   Distributor grants to Retailer a non-exclusive, revocable, nontransferable and limited license to use the Marketing Materials and any Microsoft Marks that: (i) Microsoft has given Distributor permission to sublicense to Retailer; and (ii) correspond to the Products that Reseller is authorized to distribute.  Such use shall be solely in connection with Retailer's distribution of Products to End Users in the Territory and subject to these terms.  All rights not expressly granted to Retailer with respect to the Marketing Materials and Marks are reserved by Microsoft.  Retailer shall not remove or modify any proprietary notices, licenses,

<u>EXHIBIT A</u>

DocuSign Envelope ID: 534EBFC3-0BE2-4856-951E-6F541B403486

Marks or copyright notices contained in any Marketing Materials. Retailer has no right to sublicense the rights granted in this Section 2(b). For digital Marketing Materials obtained directly from Microsoft's Retail Asset Distribution (RAD) site at https://microsoftrad.com/Home.aspx (or any other site designated by Microsoft), the terms of that license shall also apply, but this Section 2(b) shall control in the case of any conflict. Retailer shall at all times comply with the trademark and branding guidelines set forth by Microsoft at http://www.microsoft.com/trademarks/ (or any successor URL). Upon request from Microsoft, Retailer shall provide any marketing materials created by Retailer, in connection with the sale and distribution of Products, to Microsoft for review and approval.

(c)   Retailer shall use only the most up-to-date Marketing Materials and Marks. Following notification from Distributor or Microsoft that new Marketing Materials or Marks have been added or that existing Marketing Materials or Marks have been modified, Retailer shall have no more than five (5) days to add such new Marketing Materials and Trademarks to its website or, if applicable, to modify existing Marketing Materials and Marks before further use. Notwithstanding the foregoing, Microsoft may require immediate removal or modification of Marketing Materials and/or Marks in response to any third party infringement claim or applicable Laws.

(d)   Reseller shall not use any unauthorized, illegal, counterfeit, or modified hardware or software in connection with any Product or re-package or otherwise combine any Product with any unauthorized or unlicensed third-party product, in a way that Microsoft in its sole discretion concludes may: (i) create a likelihood of confusion for End Users as to the source or origin of the product; or (ii) negatively impact Microsoft's brand.

(e)   Retailer shall provide prominent notice of and easy access to Retailer's return policy and privacy policy to End Users. Such policies shall be in compliance with all applicable Laws. Retailer's return policy shall list any requirements an End User must fulfill to receive a refund, including, if applicable, proof of purchase requirements.

(f)   Retailer shall have sole responsibility for providing all aspects of customer support, customer service and billing for the purchase of Products except as may be set forth in the Additional Terms and Conditions. Reseller understands and agrees that Microsoft shall have no responsibility for support with regard the purchase and fulfillment process for Products.

3.   **Restrictions.** Reseller shall not:

(a)   (i) Change, decompile or reverse engineer any Product, in whole or in part, (except and only to the extent expressly required by applicable Law despite this limitation); (ii) lease, rent, sublicense, publish, change, adapt or translate any portion of any Product; (iii) make unauthorized copies of any Product or Product Information; (iv) modify the EULA; or (v) cause any Product, in whole or in part, to be governed by an excluded license. An "excluded license" is any license that requires, as a condition of use, modification or distribution of the Product, that the Product be: (A) disclosed or distributed in source code form; (B) licensed for the purpose of making derivative works; or (C) redistributable at no charge.

(b)   Distribute Products with any terms other than the terms of the applicable Microsoft End User License Agreement, Product Information or such other Microsoft written documentation that may be included in any Product.

(c)   Distribute any Product prior to the Street Date specified by Microsoft or after the end-of-life date identified by Distributor or Microsoft.

(d)   Embed advertising in any Product or in any transaction involving a Product unless expressly approved by Microsoft.

(e)   Distribute any Product more than five (5) days after receiving notice from Distributor or Microsoft that such Product or Code may become or is the subject of a Distributor Claim, Recall, error or defect; provided

EXHIBIT A

however that Reseller shall cease sales and distribution of such Product as soon as possible after receiving notice.

**(f)**    Subcontract its rights and/or obligations as a Reseller to any third party.

**(g)**    Distribute Products other than to: (i) a Retailer; (ii) another subdistributor entity in the Territory which then sells such Products to a Retailer; or (iii) an End User in the Territory, in accordance with the terms of this Agreement.

**(h)**    Liquidate or retain a liquidator or other unauthorized third party to dispose of Product inventory in the regular course of business unless the Guides applicable to such Product expressly authorize such use.

**4.   Termination of Reseller Status.**

**(a)**    Reseller acknowledges that expiration or termination of the Agreement between Microsoft and Distributor immediately terminates any Product distribution rights granted to Reseller by Distributor under these Reseller Terms and Conditions.  No Product returns will be accepted from Reseller following termination or expiration of the Agreement except as set forth in the Reseller Terms and Conditions. Distributor may terminate or indefinitely suspend these Reseller Terms and Conditions and all rights granted hereunder or otherwise to distribute the Products at any time and for any reason by written notice to Reseller.

**(b)**    Following the expiration or termination of these Reseller Terms and Conditions or the Distributor's distribution agreement with Microsoft in respect of Products, Reseller shall: (i) immediately cease distribution of the Products; (ii) within twenty-four (24) hours of such termination or expiration, shut down any websites or pages and any Customer access to such websites or pages that include any advertising, marketing or branding that include the Microsoft Products, Marketing Materials or Marks; (iii) promptly remove any other advertising, marketing or branding, including but not limited to in-store merchandising, that include the Microsoft Products, Marketing Materials or Marks; (iv) return to Distributor or Microsoft, at no expense to Microsoft, all ESD Products, Marketing Materials and Microsoft confidential information in Reseller's possession or control in strict accordance with Microsoft's instructions, excluding only those Codes necessary for Retailer to maintain for a period of one (1) year following expiration or termination of this agreement a digital locker for End Users who have purchased ESD Products; and (v) provide any other cooperation, as reasonably requested, to Distributor and Microsoft.

**5.   General.**

**(a)**    **Compliance with law.**  Reseller shall: (i) ensure that the distribution, sale and disposition of Products comply with all applicable Laws; (ii) use its best efforts to prevent unauthorized distribution, duplication or pirating of Products; and (iii) not knowingly distribute or aid in the distribution of any counterfeit product.  Reseller shall review and comply with the Anti-Corruption Policy for Microsoft Representatives available at http://www.microsoft.com/en-us/Legal/Compliance/anticorruption/Default.aspx.  Reseller shall provide annual anti-corruption training to its employees who resell, distribute or market Microsoft products or services on compliance with applicable local anti-corruption laws, including the U.S. Foreign Corrupt Practices Act.  To fulfill this requirement, Reseller shall either directly provide such training to its employees or require its employees to participate annually in the online Anti-Corruption training made available free of charge by Microsoft.

**(b)**    **Cooperation with Applicable Laws**. Reseller shall comply with Microsoft's and Distributor's reasonable requests aimed at ensuring compliance with Laws applicable to the Products.  If Microsoft is required to report to any governmental agency that regulates electronic distribution of consumer or commercial products, Reseller will fully cooperate and provide assistance as needed.

**(c)**     **Records and Audits**.  Reseller shall keep and maintain complete and accurate records on its premises of all matters governed by these Reseller Terms and Conditions.  During the term and for a period of two (2) years following the termination of the Reseller Terms and Conditions, Reseller agrees that Distributor, Microsoft or their designated representatives, may conduct audits of Reseller's applicable books, records, systems and operations upon twenty-four (24) hours' notice, to verify Distributor's compliance with the Reseller Terms and Conditions.  Unless otherwise requested by Microsoft, Reseller will promptly correct any errors and omissions disclosed by such audit.

**(r)**     **Product Warranty.**  Reseller understands and agrees that the Products are provided with no warranty from Microsoft except to End Users as set forth in the applicable End User License Agreement or Product Information accompanying each Product.  Reseller will ensure that such End User License Agreement or materials containing the warranty shall accompany each Product that Reseller distributes.  The limited warranties contained therein are in lieu of all other warranties, express or implied, or statutory, including implied warranties of merchantability and fitness for a particular purpose, noninfringement of intellectual property or any other obligations or liabilities on Microsoft's part, and Reseller shall waive and disclaim any such other warranties to the full extent permitted by applicable Law.   Reseller will not make any representations, warranties, guarantees or promises with respect to any Product that are not contained in or would conflict with any written warranty documentation that Microsoft provides for delivery to the End Users.  Reseller will be responsible for any extended manufacturer's warranty that it provides to End Users.

**(d)**     **Privacy/Security.**  Reseller shall adhere to: (i) all applicable privacy Laws related to the storage, collection, use and processing of personal information and payment card data related to its distribution of Products; and (ii) any Microsoft policies and standards provided to Reseller in respect of the same.  In addition to any other security measures required by Distributor, Reseller shall implement and maintain commercially reasonable security procedures and measures in connection with the ecommerce systems used in distributing the Products (including physical lock/key security, computer and communications network security and data security) designed to prevent disclosure of Microsoft intellectual property and Confidential Information to any unauthorized persons or any damage to Products, Marketing Materials or Confidential Information. Reseller shall notify Distributor and Microsoft immediately in writing in the event of any breach or failure to comply with these or any other security or data protection requirements or of any breach of its security affecting Products, Marketing Materials or Microsoft intellectual property or Microsoft Confidential Information. Reseller shall fully cooperate with Distributor and Microsoft with respect to such breach or failure to comply with this section.

**(e)**     **Modification.**  Microsoft may require Distributor to modify the Reseller Terms and Conditions from time to time.  Distributor shall provide modified Reseller Terms and Conditions to Reseller within five (5) days of Distributor's receipt from Microsoft.  Modifications to these Reseller Terms and Conditions shall be deemed effective as against Reseller: (i) five (5) days after the Reseller's receipt of such modifications from Distributor if the modifications relate to the storage, handling or distribution of Microsoft intellectual property; or (ii) thirty (30) days after the Reseller's receipt of such modifications from Distributor in all other cases.

**(f)**     **Integration Requirements.**   Reseller must satisfy any systems integration requirements provided by Distributor or Microsoft prior to distributing Products or Codes to End Users.

**(g)**     **Maintaining and Reporting Eligible Status.**  From time to time, Distributor or Microsoft may require Reseller to provide such information as necessary to demonstrate that Reseller meets all requirements to participate as a Reseller and is in compliance with these Reseller Terms and Conditions.  Reseller shall promptly respond to any such request from Distributor or Microsoft.

**(h)**     **Consent to Jurisdiction.**  Reseller agrees that the laws of the State of Washington govern the Reseller Terms and Conditions for any dispute between Microsoft and Distributor or Microsoft and Reseller that involves the rights granted to Reseller hereunder or otherwise relates to this agreement.  If federal jurisdiction exists for

<u>EXHIBIT A</u>

DocuSign Envelope ID: 534EBFC3-0BE2-4856-951E-6F5418403486

any such dispute, Reseller consents to exclusive jurisdiction and venue in the federal courts in King County, Washington.  If not, Reseller consents to exclusive jurisdiction and venue in the Superior Court of King County, Washington.  Reseller waives any defenses to the laying of venue in such courts, including, without limitation, any defenses based on lack of personal jurisdiction or forum nonconveniens.

EXHIBIT A



Christopher A. Camardello, Esq.
(612) 465-0349
chris@mantylaw.com

February 23, 2018

<u>Via U.S. Mail</u>

Microsoft
President
One Microsoft Way
Redmond, WA 98052-6399

Re:   WYNIT Distribution, LLC, BKY 17-42726
WD Navarre Distribution, LLC, BKY 17-42728
WD Encore Software, LLC, BKY 17-42729
WD Navarre Holdings, LLC, BKY 17-32864
WD Navarre Digital Services, LLC, BKY 17-32865
WYNIT Holdings, Inc., BKY 17-32866
WD Navarre Canada, ULC, BKY 17-32867
*All Cases Jointly Administered Under BKY 17-42726*

### DEMAND LETTER

To Whom It May Concern:

The above-named entities filed for chapter 11 bankruptcy on September 8, 2017, in the District of Minnesota. The cases were converted to chapter 7 cases on January 17, 2018. The cases are being jointly administered under WYNIT Distribution, LLC, BKY 17-42726 (together, the "debtors"). Nauni Manty has been appointed as the chapter 7 trustee of the debtors' bankruptcy estates. Manty and Associates, P.A. represents Ms. Manty.

Ms. Manty's duties include collecting monies owed to the debtors. The debtors have advised Ms. Manty that you owe $189,285.39 to WYNIT Distribution LLC. Please forward these funds to our office within 21 days of the date of this letter. Please issue payment to "Nauni Manty, chapter 7 trustee." If we do not receive payment by that date, we will file a lawsuit in the bankruptcy court.

Please contact me if you would like to discuss the above. I am not, however, able to provide you with any legal advice. You should consult your own attorney with any legal questions.

Very truly yours,

MANTY & ASSOCIATES, P.A

Christopher A. Camardello

### EXHIBIT B

Phone: 612-465-0990   Fax: 612-746-0310
401 Second Avenue North, Suite 400, Minneapolis, MN 55401

| Vendor Number | VendorName | Invoice | Due Date | Disc Date | Original Invoice | Total Owed to WYNIT | Credit Given by Microsoft | Expected by WYNIT | Credits Written off by WYNIT | Reason |
|---|---|---|---|---|---|---|---|---|---|---|
| MIC109 | Microsoft | CK5000045219 | 4/2/2017 | 4/2/2017 | (338,997.98) | (338,997.98) | 338,997.98 | | | Payment made by Microsoft for part of the debit balance |
| MIC109 | Microsoft | 6081898756 | 5/24/2017 | 5/24/2017 | 41,634.19 | 41,634.19 | (38,431.56) | 0.00 | (3,202.63) | |
| MIC109 | Microsoft | 6081847826 | 9/29/2016 | 9/29/2016 | 117,366.97 | 117,366.97 | (105,850.19) | 0.00 | (11,516.78) | POD Weights are in tune with what they credited |
| MIC109 | Microsoft | 6081823609 | 4/12/2016 | 4/12/2016 | 2,072.29 | 2,072.29 | 0.00 | (2,072.29) | | Please see tracking information that was sent on 12/11/17 |
| MIC109 | Microsoft | 6081832268 | 4/13/2016 | 4/13/2016 | 2,825.85 | 2,825.85 | 0.00 | (2,825.85) | | Please see tracking information that was sent on 12/11/17 |
| MIC109 | Microsoft | 6081898757 | 5/23/2017 | 5/23/2017 | 30,707.57 | 30,707.57 | (11,303.40) | (19,404.17) | | POD's show that they signed in full for this return |
| MIC109 | Microsoft | 6021100007 | 11/19/2016 | 11/19/2016 | 2,268.64 | 2,268.64 | 0.00 | (2,268.64) | | This was not on the spreadsheet Microsoft sent to us. See RMA backup with tracking sent on 12/11/17 |
| MIC109 | Microsoft | MULTIPLERMAS | 6/25/2016 | 6/25/2016 | 26,666.11 | 26,666.11 | (12,245.35) | (14,420.76) | | POD Weights are more than what they are crediting |
| MIC109 | Microsoft | 6021222327 | 9/29/2016 | 9/29/2016 | 8,404.28 | 8,404.28 | 0.00 | (3,506.08) | (4,898.20) | Microsoft states that they sent this return back to WYNIT. The POD weights of the original return are more than what they returned back to us. They should credit us for the total sent back. |
| MIC109 | Microsoft | MULTI120816 | 12/8/2016 | 12/8/2016 | 206,852.22 | 206,852.22 | (127,163.25) | (79,688.97) | | The weights of our POD show that we sent back the full product as compared to the weights that they say they received. |
| MIC109 | Microsoft | MULTI101716 | 10/18/2016 | 10/18/2016 | 89,485.25 | 89,485.25 | 0.00 | (89,485.25) | | This was shipped to Microsoft Headquarters in Redmond WA. |
| | | | | | 189,285.39 | | 44,004.23 | (213,672.01) | (19,617.61) | |

| | | |
|---|---|---|
| Returns that we sent tracking but do not have the weights to back it up. Only the | (26,570.95) | |
| Returns in which WYNIT's tracking/weights backup what was claimed to be sent | (97,615.81) | Microsoft to focus on these ones first |
| Return that was shipped to Redmond, WA which is their headquarters. | (89,485.25) | |
| Total amount of | (213,672.01) | |

EXHIBIT B